IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02103-CMA-STV

MOTTO FRANCHISING, LLC,

    Plaintiff,

v.

JOSEPH MCCABE, and
GREATER PHILADELPHIA AREA MORTGAGE, LLC, *doing business as Home Front Mortgage*,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Motto Franchising, LLC's Motion for Summary Judgment Against All Defendants ("Motion for Summary Judgment" or "Motion"). (Doc. # 85.) For the following reasons, the Court grants the Motion.

### I.    BACKGROUND

**A.    FACTUAL BACKGROUND**

Motto Franchising, LLC ("Motto") entered into a Franchise Agreement with Defendant Greater Philadelphia Area Mortgage, LLC ("GPAM") with personal guaranty and assumption of obligations by Defendant Joseph McCabe and Chris Wagenhoffer (jointly referred to as the "Original Defendants"). Motto initiated a prior action in this District against the Original Defendants—Civil Action No. 1:18-cv-01131-RM-MJW ("Prior Action")—alleging, *inter alia*, misuse of Motto's trademarks, resources and

confidential information in connection with the Original Defendants' operation of a competitive brokerage; nonpayment of amounts due under the Franchise Agreement; and multiple breaches of the Franchise Agreement.

Motto and the Original Defendants resolved the disputes underlying the Prior Action by entering into a Settlement and Release Agreement with an effective date of July 26, 2018 ("Settlement Agreement"). The Settlement Agreement was finalized after extended negotiations with the Original Defendants through their respective counsel. It imposed certain obligations on the Original Defendants, including that they timely make monthly payments to Motto. *See generally* (Doc. # 87). Specifically, as relevant in this case, the Settlement Agreement required that Defendants McCabe and GPAM pay Motto $150,000 in monthly installments. Additionally, the Settlement Agreement included a "Confession of Judgment," wherein the Original Defendants agreed that, should they default on any of the Settlement Agreement terms, Motto would be entitled to entry of judgment against them, jointly and severally. (Doc. # 87 at 21–25.)

In exchange for the Original Defendants' promises under the Settlement Agreement, Motto agreed to terminate the Franchise Agreement and any other franchise rights and obligations between Motto and the Original Defendants, released the Original Defendants of all further obligations under the Franchise Agreement except as set forth in the Settlement Agreement, and voluntarily dismissed the Prior Action. (Doc. # 85-1 at 2.)

Wagenhoffer fully complied with his obligations under the Settlement Agreement. By contrast, Mr. McCabe and GPAM ("Defendants") have failed to timely

make monthly payments since 2019. (*Id.* at 3–4.) Defendants partially performed under the Settlement Agreement, paying Motto a total of $16,700 through February of 2019. After Defendants failed to make multiple monthly payments, Motto issued a Notice of Default to Defendants on June 12, 2019, and provided Defendants multiple opportunities to cure the default. (Doc. # 85-2.) Despite Motto's efforts, Defendants have failed to make any further payments to Motto. (Doc. # 85-1 at 4.)

**B.     PROCEDURAL BACKGROUND**

Motto initiated the instant lawsuit against Defendants McCabe and GPAM on July 22, 2019. (Doc. # 1.) Motto filed an Amended Complaint on August 5, 2019. (Doc. # 11.) Therein, Motto asserts a claim for breach of contract against Defendants for various breaches of the Settlement Agreement. (*Id.*)

It is manifest from the record that Defendant GPAM is in default. Despite multiple orders by the Court to retain counsel, GPAM has failed to retain counsel in this matter. Further, GPAM has failed to file a responsive pleading, appear at any hearings, or file a response to any motions.

Motto filed the instant Motion for Summary Judgment against all Defendants on September 11, 2020. (Doc. # 85.) Therein, Motto seeks judgment against Defendants in the amount of $133,300.00, pursuant to the Confession of Judgment, as well as leave to supplement the judgment with attorneys' fees, interest, and costs. (*Id.* at 7–8.) On October 2, 2020, Defendant McCabe filed his Response to Motto Franchising, LLC's Motion for Summary Judgment ("Response"), with the Affidavit of Joseph McCabe

3

("Affidavit") attached thereto. (Doc. ## 88, 88-1.) Defendant GPAM failed to respond to the Motion. Motto filed a Reply. (Doc. # 91.)

## II.     LEGAL STANDARDS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

---

[1] This Court is aware of several district court cases that have concluded that a motion for default judgment, as opposed to a motion for summary judgment, is the appropriate avenue of relief against a defendant in default. *See, e.g.*, *Phillips Factors Corp. v. Harbor Lane of Pensacola, Inc.*, 648 F. Supp. 1580, 1582–83 (M.D.N.C. 1986) (holding that a motion for default judgment, rather than a motion for summary judgment, was the "appropriate avenue of relief" against a party subject to clerk's default); *United States v. Estate of Segel*, No. 8:08-cv-2196-T-23EAJ, 2010 WL 1730749, at *1 (M.D. Fla. Apr. 27, 2010) (construing motion for summary judgment as a motion for default judgment). In this case, construing the instant Motion as a motion for summary judgment against Defendant McCabe and a motion for default judgment against GPAM would require the Court to analyze the identical case against both Defendants under different standards of review. It would, therefore, be a circuitous waste of judicial resources. Instead, the Court analyzes the Motion under the applicable summary judgment standards, which impose a higher burden of proof on Motto than default judgment standards would impose.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.  DISCUSSION

**A.  SUBJECT MATTER JURISDICTION**

Defendant McCabe has repeatedly challenged the Court's subject matter jurisdiction over this action by asserting that Motto and GPAM are not diverse. In so doing, Defendant McCabe provided inconsistent information regarding the citizenship of

GPAM's members. *See, e.g.*, (Doc. ## 23, 35, 45). He now admits, despite multiple statements to the contrary, that he is the sole member of GPAM. (Doc. # 88-1 at 1.) It is now clear that all members of Plaintiff Motto are citizens of Delaware, and Defendant McCabe and all members of GPAM are citizens of Pennsylvania. (Doc. # 11 at 4.) Thus, complete diversity exists between the parties, and the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**B.      MOTION FOR SUMMARY JUDGMENT**

Motto moves for summary judgment on its sole claim in this case—i.e., breach of contract. Defendant McCabe opposes summary judgment on the grounds that he was under economic duress when he signed the Settlement Agreement. The Court first determines that Motto has established the elements of breach of contract as a matter of law and then concludes that Defendant McCabe has not raised a genuine issue of material fact with respect to economic duress.

1.      Breach of Contract

The parties agreed that the Settlement Agreement shall be interpreted and construed under the laws of the State of Colorado. Under Colorado law, the elements of breach of contract are (1) the existence of contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages. *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992); *see also Marquardt v. Perry,* 200 P.3d 1126, 1129 (Colo. App. 2008).

The elements of breach of contract are undisputed in this case. First, Motto has established the existence of a contract. Motto and Defendants entered into the

Settlement Agreement, with an effective date of July 26, 2018. The fully executed Settlement Agreement was signed, in relevant part, by Defendant McCabe and Motto's president. (Doc. # 87 at 25.) The Settlement Agreement incorporates the Confession of Judgment by reference, which was signed in turn by Defendant McCabe. (Doc. # 87 at 21–23.)

Second, Motto has established it performed under the Settlement Agreement. In exchange for Defendants' promises and obligations under the Agreement, Motto dismissed its Prior Action, agreed to terminate the Franchise Agreement, and released Defendants of all further rights and obligations under the Franchise Agreement except as set forth in the Settlement Agreement. (Doc. # 85-1 at 2.)

Third, Motto has established that Defendants failed to perform under the Settlement Agreement by defaulting on payments as of early 2019. Thereafter, Motto provided Defendants written notice and opportunities to cure their default. Defendants failed to cure the default, which entitles Motto to entry of judgment against them pursuant to the Confession of Judgment and the terms of the Settlement Agreement. *See generally* (Doc. ## 85-1, 87).

Finally, Motto was financially injured by Defendants' failures to perform under the Settlement Agreement. Plaintiff's damages include, *inter alia*, the unpaid principal balance of $133,300.00, plus interest, attorneys' fees, and costs. Accordingly, the undisputed record establishes each element of Motto's breach of contract claim as a matter of law.

    2.    <u>Enforceability of the Settlement Agreement – Economic Duress</u>

Defendant McCabe argues in his Response that the Settlement Agreement is unenforceable because he signed it under economic duress. He advances two theories in support of that argument. First, he asserts that he had no reasonable alternative to signing the Settlement Agreement because, if he did not sign it, RE/MAX would not renew his Franchise Agreement and he would face financial ruin.[2] Second, he argues that the Settlement Agreement is unreasonably unfair because it settled claims concerning the Franchise Agreement, which he believes to be invalid. As described in detail below, neither theory creates a genuine issue of material fact for trial.

    a.    *Applicable Law*

"A contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative." *Vail/Arrowhead, Inc. v. District Court for Fifth Judicial Dist., Eagle County,* 954 P.2d 608, 612 (Colo. 1998) (en banc); *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 521 (Colo. App. 2006). Although the concept of duress has expanded since the days of common law, not all coercive business practices amount to duress. *See Cooper v. Flagstaff Realty,* 634 P.2d 1013, 1015 (Colo. App. 1981). A party that coerces another into signing a contract by threatening to take an action that it has a legal right to take does not inflict duress sufficient to void the contract. *See DeJean v. United Airlines, Inc.,* 839 P.2d 1153, 1160 (Colo. 1992); *Cooper,* 634 P.2d at 1015.

---

[2] Mr. McCabe understood that RE/MAX and Motto are owned by the same parent company. (Doc. # 88-1 at 2.)

The party seeking to avoid enforcement of a contract must show that the "force or threats employed actually subjugated the mind and will of the person against whom they were directed, and were thus the sole and efficient cause of the action which he took." *Wiesen v. Short,* 604 P.2d 1191, 1192 (Colo. App. 1979) (quoting *Hastain v. Greenbaum,* 470 P.2d 741 (Kan. 1970)). Under *Wiesen,* courts must look to the effect of any threat on the recipient and whether the threat effectively removed the recipient's ability to select a reasonable alternative to executing the challenged contract. *See Vail/Arrowhead,* 954 P.2d at 613 ("An improper threat does not constitute economic duress if the victim fails to pursue a reasonable alternative but instead yields to the threat."); *Wiesen,* 604 P.2d at 1192 (notwithstanding threats of litigation, court declined to invalidate an agreement where party "discussed [the] matter with a lawyer, and had an opportunity to reflect").

In reviewing whether the recipient of a threat was deprived of a reasonable alternative, the Colorado Supreme Court and the Restatement (Second) of Contracts have suggested that courts may look to the nature of the bargain that the parties strike. If the resulting agreement is shocking or unreasonably unfair, the implication is that the threat was sufficiently coercive and duress is a valid basis to void the contract. *See Vail/Arrowhead,* 954 P.2d at 613 ("The fairness of the resulting exchange is often a critical factor in cases involving threats.") The opposite is also true; if the agreement appears reasonable, the implication is that duress was not a factor in its formation.

Typically, the existence of duress is a question of fact, but courts may resolve it on summary judgment if the party arguing duress cannot establish a triable issue of fact. *See Premier Farm Credit,* 155 P.3d at 521.

b. Analysis

In this case, the Court finds that Defendant McCabe's representation by counsel during the negotiation of the Settlement Agreement precludes him from establishing economic duress. Under Colorado law,

> it is a general rule that a transaction cannot be held to have been induced by duress, notwithstanding any threats which may have been made, where the party had and took an opportunity for reflection and for making up his mind, and where he consulted with others and had the benefit of their advice, especially where he was advised by his counsel.

*Wiesen*, 604 P.2d at 1192 (quoting *Hastain*, 470 P.2d 741).

It is undisputed that Defendant McCabe was represented by counsel during the negotiation, drafting, and execution of the Settlement Agreement. (Doc. # 85-1 at 3); (Doc. # 88-1 at 2). Moreover, it is undisputed that the Settlement Agreement was finalized after "extended negotiations" between the parties' respective counsel and, therefore, that Mr. McCabe had ample opportunity to reflect on the bargain struck in the Settlement Agreement. *See* (Doc. # 85-1 at 3); *see also* (Doc. # 91 at 5–7) (explaining that negotiations took place over the course of two months) (citing (Doc. ## 91-1, 93, 93-1)). These findings are reinforced by the text of the Settlement Agreement itself, which expressly provides that the parties read and understood its conditions and obligations; had reasonable time to consider its terms; had the opportunity to, and did in fact, obtain counsel for the negotiation, drafting, and execution of the Agreement; and

10

voluntarily executed the Agreement without pressure or influence.[3] Therefore, Defendant McCabe's argument that the Settlement Agreement was induced by economic duress fails as a matter of law. *See Wiesen*, 604 P.2d at 1192; *see also Conagra Trade Grp., Inc. v. Fuel Expl., LLC*, 636 F. Supp. 2d 1166, 1174 (D. Colo. 2009) (explaining that the defendant's "consultations with counsel preclude any reasonable jury from finding that [it] was beholden to [the plaintiff's] demands or left without a reasonable alternative to signing the [a]greement.").

Further, even if the Court were to consider the merits of Mr. McCabe's economic duress arguments, said arguments are insufficient to overcome summary judgment.

First, from the Court's review of the Settlement Agreement, the Agreement is not shockingly or unreasonably unfair. Mr. McCabe argues that the Settlement Agreement is unreasonably unfair because it resolved claims concerning the Franchise Agreement, which he believes to be invalid. However, under the terms of the Settlement Agreement, the parties agreed to "settle all matters between them, including all claims, causes of action, and demands whatsoever, relating to or arising out of any acts or events that occurred at any time prior to the Effective Date of this Agreement." (Doc. # 87 at 2.) Accordingly, Mr. McCabe waived any potential challenges to the enforceability of the Franchising Agreement by entering into the Settlement Agreement.

---

[3] *See, e.g.*, (Doc. # 87 at 10–11, 13–14) (providing that the parties "have read this Agreement and agree to the conditions and obligations set forth in it"; "have had reasonable time to consider the terms of this Agreement, have had the opportunity to seek legal counsel, and, in fact, have obtained counsel with respect to this Agreement"; and have "voluntarily execute[d] this Agreement after having had full opportunity to consult with legal counsel and without being pressured or influenced by any statement or representation" by any party).

Second, Mr. McCabe fails to explain how Motto lacked a legal right not to renew his Franchise Agreement. A party that coerces another into signing a contract by threatening to take an action that it has a legal right to take does not inflict duress sufficient to void the contract. *See DeJean,* 839 P.2d at 1160; *Cooper,* 634 P.2d at 1015. From the Court's review of the record, there is no dispute that Motto had the right not to renew the Franchise Agreement, particularly given Defendants' breaches of the Franchise Agreement alleged in the Prior Action. Consequently, Mr. McCabe cannot void the Settlement Agreement by claiming economic duress. *See DeJean,* 839 P.2d at 1160; *Cooper,* 634 P.2d at 1015.

Lastly, Defendant McCabe has failed to raise a triable issue of fact with respect to whether the threat not to renew his RE/MAX franchise effectively removed his ability to find a reasonable alternative to executing the Settlement Agreement. In his Affidavit, Mr. McCabe expressed general fear of financial ruin should his RE/MAX franchise not be renewed. (Doc. # 88-1 at 2.) On the other hand, he characterized his RE/MAX franchise as "unprofitable" due to flaws in the business model. (*Id.* at 3–4.) In his Affidavit, Mr. McCabe conclusorily stated that he had no reasonable alternative to signing the Settlement Agreement, yet he failed to demonstrate any consideration of alternatives to operating a RE/MAX franchise. Mr. McCabe's Affidavit is, therefore, insufficient to raise a triable issue of fact concerning economic duress. *Cf. Vail/Arrowhead,* 954 P.2d at 613 ("An improper threat does not constitute economic duress if the victim fails to pursue a reasonable alternative but instead yields to the threat."). Motto is entitled to summary judgment on its claim for breach of contract.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Motto Franchising, LLC's Motion for Summary Judgment Against All Defendants (Doc. # 85) is GRANTED;

- summary judgment shall enter in favor of Plaintiff Motto Franchising, LLC and against Defendants Joseph McCabe and Greater Philadelphia Area Mortgage in the amount of $133,300.00, for which Defendants McCabe and GPAM are jointly and severally liable;

- Motto may file motions for attorneys' fees, interest, and costs in accordance with the Federal Rules of Civil Procedure, the District of Colorado's Local Rules, and this Court's Civil Practice Standards;

- Motto Franchising, LLC's Motion *in Limine* (Doc. # 99) is DENIED AS MOOT;

- the Final Trial Preparation Conference set for February 26, 2021, and the one-day bench trial set for March 12, 2021, are hereby VACATED; and

- the Clerk of Court is respectfully directed to close this case.

DATED:  February 19, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge